UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KERRY KOTLER,

                              **Plaintiff,**

                                v.                                9:06-CV-1308
                                                             (FJS/DEP)

**L. JUBERT, Deputy Superintendent of
Security; W. DANN, Correction Sergeant;
DARWIN DAILY, Corrections Officer; and
DAVID CHARLAND, Corrections Officer,**

                                **Defendants.**
_____

**APPEARANCES**                               **OF COUNSEL**

**KERRY KOTLER**
**97-A-6645**
Franklin Correctional Facility
P.O. Box 10
Malone, New York 12953
Plaintiff, *pro se*

**OFFICE OF THE NEW YORK**        **GREGORY J. RODRIGUEZ, AAG**
**STATE ATTORNEY GENERAL**      **WILLIAM A. SCOTT, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

A jury trial was held between November 30, 3016, and December 2, 2016, at the conclusion of which the jury returned a verdict in favor of Defendants. Plaintiff now moves for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure or, in the alternative, for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. *See* Dkt. No. 266. Defendants oppose this motion. *See* Dkt. No. 271.

**II. BACKGROUND**

Plaintiff Kerry Kotler filed a complaint seeking compensatory and punitive damages under 42 U.S.C. § 1983, alleging, among other things, that Defendants planted a weapon in his prison cell and then disciplined him for possession of that weapon in retaliation for his participation as a member of the Inmate Grievance Resolution Committee ("IGRC") and for filing individual grievances in violation of his rights under the First Amendment. *See* Dkt. No. 1.

At the trial, Plaintiff called Gregory Stanley, John Donelli, and Defendants Daily, Dann, Charland, and Jubert as witnesses.[1] Plaintiff also testified. Defendants called a single witness, Defendant Jubert. At the end of the third day of trial, the jury returned a unanimous verdict in favor of Defendants. *See* Dkt. No. 261.

Plaintiff now moves for judgement as a matter of law or, in the alternative, for a new trial. *See generally* Dkt. No. 266. Plaintiff raises five grounds to support his motion. First, Plaintiff argues that the verdict is against the weight of the evidence because the timing of the

---

[1] John Donelli and Defendant Charland were unavailable to testify in person; therefore, the Court allowed parts of each of their previous depositions to be read into the record.

search of his cell and packing of his possessions is, according to him, temporally impossible. Second, Plaintiff contends that the Court erred in sending information into the jury room, in the form of a response to the jury's question, which was not entered into evidence. Third, Plaintiff asserts that the Court erred in prohibiting him from putting all of his grievance records into evidence. Fourth, Plaintiff argues that the Court fast-tracked the trial in a manner that denied him full and fair due process. Finally, Plaintiff asserts that the Court erred in dismissing his due process claim against Defendant Jubert.

### III. DISCUSSION

**A.     Rule 50(b) motion for judgment as a matter of law**

Defendants argue that Plaintiff cannot bring a motion pursuant to Rule 50 "without a showing that a ruling is required to prevent 'manifest injustice'" because he failed to move for judgment as a matter of law before the Court submitted the case to the jury. *See* Dkt. No. 271 at 5 (quoting *Henry v. Dinelle*, 929 F. Supp. 2d 107, 114 (N.D.N.Y. 2013)). Defendants contend that "[m]anifest injustice 'exists only when a jury's verdict is 'wholly without legal support.'" *See id.* (quoting *Henry*, 92 F. Supp. 2d at 114 (quotation omitted)). Defendants argue that Plaintiff cannot show that a manifest injustice has been done because he "failed to prove that the Defendants planted a weapon on him or that they retaliated against [him] for his grievance activity." *See id*.

To the contrary, Plaintiff argues that "defendants' account of what occurred lacks the 'window of opportunity' necessary to be physically possible"; and, thus, the verdict was a "manifest injustice." *See* Dkt. No. 272 at 1. Plaintiff also argues that the Court "stated prior to the verdict that it would hear the parties' motions at a later time." *See id*.

Rule 50(b) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment -- or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged -- the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 50(b).

Thus, a pre-requisite for a post-trial motion for judgment as a matter of law is a motion seeking relief on similar grounds during the trial. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (stating that "[a] motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury" (citations omitted)).

As Plaintiff admits, he did not make a Rule 50(a) motion during trial.[2] However, Plaintiff may still seek relief pursuant to Rule 50(b) "to prevent manifest injustice." *Lore v. City of Syracuse*, 670 F.3d 127, 153 (2d Cir. 2012) (citations omitted). Plaintiff's only argument in this regard is that the verdict is against the weight of the evidence.

In support of this argument, Plaintiff focuses on certain timing issues that he asserts demonstrate that Defendants conspired to plant a weapon in his cell. Plaintiff contends that "an 8:35/am I-2 Dorm Log entry indicates all of [his] property was 'secured in officers' storage room' and [Defendant Daily] could not have been in [his] cube searching the property between the time

---

[2] Plaintiff's assertion that the Court stated that it would consider motions at a later time is erroneous. Defendants moved for relief under Rule 50; therefore, Plaintiff similarly had the opportunity, yet failed, to make such a motion. *See* Dkt. No. 256 at 2 ("Defendants move for a directed verdict pursuant to Rule 50. Reserved").

of 8:35/am and 9:20/am as he claimed if the property was secured in storage at the time." *See*

Dkt. No. 266-2 at 2. Furthermore, Plaintiff asserts that Defendant Daily claimed to have

> downloaded the photograph of the weapon up front in the administration building at 9:20/am; and if [he] had just completed the search of [P]laintiff's property at 9:20/am, there was no time available for [Defendant Daily] to secure [P]laintiff's property in the officers' storage room, secure a ride up front, travel through multiple gates and check points, secure the camera box key, then the camera, take a photograph of the weapon, plug the camera into the computer, upload the photographic image taken, and then type up the language that appears at the bottom of the digital image he created, before 9:20/am.

*See id*.

Thus, Plaintiff contends that Defendant Daily's testimony was not credible, "nor even possible." *See id.*

However, in determining a Rule 50 motion, a court "'must give deference to all credibility determinations and reasonable inferences of the jury, and may not weigh the credibility of witnesses. . . .'" *Kinneary v. City of New York*, 601 F.3d 151, 155 (2d Cir. 2010) (quotation omitted); *see also Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007) (stating that, "[i]n considering a motion for judgment as a matter of law, the district court *'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence'*" (quotation omitted)). In other words, a court will not grant judgment as a matter of law unless

> "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him."

*Mallis v. Bankers Trust Co.*, 717 F.2d 683, 688-89 (2d Cir. 1983) (quotation and other citation omitted).

The Court finds that, on this record, Plaintiff cannot meet this standard. As the Court explained in its instructions to the jury, it was Plaintiff's burden to prove by a preponderance of

the credible evidence that "Defendants Jubert, Daily, Dann, and Charland violated his First Amendment rights by retaliating against him for his participation as a member of the Inmate Grievance Resolution Committee and for filing grievances on his own behalf." *See* Dkt. No. 260 at 10. "Specifically, Plaintiff [had to prove] that Defendants planted a weapon in his prison cell which resulted in his being disciplined for possessing that weapon." *See id*.

A review of the record makes clear that the jury weighed the credibility of Defendant Daily, as well as the other witnesses, against the credibility of Plaintiff, and found in favor of Defendants. Each Defendant specifically testified that he did not plant a weapon in Plaintiff's cell. Plaintiff testified to the contrary. It was within the jury's purview to credit Defendants' testimony rather than Plaintiff's when considering the evidence. Therefore, the Court finds that there will be no "manifest injustice" if the Court denies Plaintiff's motion for judgment as a matter of law; and, accordingly, it does so.

**B.  Rule 59 motion of a new trial**

*1. Standard of review*

A court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). "'A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Atkins v. N.Y. City*, 143 F.3d 100, 102 (2d Cir. 1998) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir. 1997)).

### 2. Plaintiff's grounds for a new trial

#### a. Weight of the evidence

"The standard for granting a new trial pursuant to Rule 59 is somewhat less exacting than the standard for granting judgment as a matter of law pursuant to Rule 50(b)." *James v. Melendez*, 567 F. Supp. 2d 480, 482 (S.D.N.Y. 2008) (citing *Manley v. AmBase Corp.*, 337 F.3d 237, 244 (2d Cir. 2003)). In that regard, "a court may order a new trial even if substantial evidence supports the jury verdict, and the court is free to weigh the evidence for itself and need not view the evidence in the light most favorable to the non-moving party." *Id.* at 482-83 (citation omitted). However, "'a decision is against the weight of the evidence . . . if and only if the verdict is [(1)] seriously erroneous or [(2)] a miscarriage of justice.'" *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417-18 (2d Cir. 2012) (quoting *Farrior [v. Waterford Bd. of Educ.]*, 277 F.3d [633,] 635 [(2d Cir. 2002)]) (other citation omitted).

As the Court explained above, the weight of the evidence supports the jury's verdict. Therefore, the Court denies Plaintiff's motion on this ground.

#### b. The jury note

During deliberations, the jury sent a note to the Court with two questions. First, the jury asked, "Were there video cameras in I-2-14?" *See* Dkt. No. 259 at 1. Second, the jury asked, "Is an inmate allowed to ask why they are being detained?" *See id.* The Court responded, "No there are not cameras in I-2. Yes, an inmate may ask why he/she is being detained." *See id.* at 2.

Before responding to the note, the Court provided the parties with an opportunity to discuss its contents and the Court's response. The Court read the questions to the parties and asked them to confirm the appropriate answer. *See* Dkt. No. 266-3 at 132. The parties agreed

with the response and, importantly, raised no objections. *See id*. Although Plaintiff argues that he did not have an opportunity to object, that is clearly incorrect as the trial transcript demonstrates. Therefore, the Court finds that Plaintiff has waived any objection to the Court's response to the jury note.[3] *See Tatum v. Jackson*, 668 F. Supp. 2d 584, 595 (S.D.N.Y. 2009); *Bennaceur v. Latrenta*, No. 92 Civ. 3748, 1993 WL 330497, *3 (S.D.N.Y. Aug. 24, 1993).

Furthermore, the jury note provides no basis to find that the jury's questions indicated confusion about the legal requirements applicable to Plaintiff's First Amendment retaliation claim. In addition, although Plaintiff argues to the contrary, the note's factual accuracy cannot seriously be disputed.

Therefore, because the Court's response to the jury's note provides no basis for overturning the verdict, the Court denies Plaintiff's motion on this ground.

### *c. Grievance records*

Plaintiff argues that the Court erred in failing to allow him to introduce into evidence certain grievances and recommendations that demonstrated his protected conduct. *See* Dkt. No. 266-2 at 5. Plaintiff contends that he laid a proper foundation for the evidence and that this evidence was highly relevant; therefore, the Court should have allowed its introduction. *See id*.; *see also* Dkt. No. 266-1 at 9. Plaintiff further states that the additional grievances "had independent relevance that went way beyond establishing the fact that the conduct was protected." *See* Dkt. No. 272 at 5.

---

[3] Plaintiff further asserts that he made his objection known to the Deputy Court Clerk, *see* Dkt. No. 266-1 at 8; however, there is no record that this transpired; and, in any event, Plaintiff never objected to the Court.

Pursuant to Rule 403 of the Federal Rules of Evidence, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . *needlessly presenting cumulative evidence*." Fed. R. Evid. 403 (emphasis added). In this case, the relevance and probative value of Plaintiff's grievances and grievance recommendations were to show that he engaged in protected activity. The Court recognized as much and allowed Plaintiff to admit many of these records into evidence. Furthermore, the Court instructed the jury that, "as a matter of law . . . these actions constitute protected activity." *See* Dkt. No. 260 at 11.

Plaintiff asserts "that the substance of the writings, and the manner in which officials responded to that activity had independent relevance that went way beyond establishing the fact that the conduct was protected." *See* Dkt. No. 272 at 5. However, Plaintiff fails to articulate any specifics with regard to the independent relevance of each grievance report. As Defendants imply, Plaintiff never attempted to connect any individual defendant with any of the specific grievances. Moreover, Plaintiff disregards what this case was ultimately about -- whether Defendants planted a weapon in Plaintiff's cell in retaliation for his conduct on the IGRC and his filing of individual grievances. Indeed, Plaintiff readily acknowledged as much. *See* Dkt. No. 271-1 at 1:18-20 (stating that this case is "about whether these defendants over here retaliated against me and/or aided others in that retaliation to do so for my protected activities"). Therefore, the Court finds that, because the excluded grievances had no independent relevance, the Court properly excluded them as unnecessarily cumulative. Thus, the Court denies Plaintiff's motion on this ground.

### *d. Fast-tracked trial*

Plaintiff's argument that the Court "fast-tracked" the trial focuses on his disagreement with the Court's rulings regarding the scope of his examination of Defendants Dann and Daily. In sum, Plaintiff asserts the following errors with respect to his examination of these witnesses:

(1) the Court erroneously ruled that Plaintiff's inquiry into Defendant Daily's recollection of the time he spent performing the search of Plaintiff's property was irrelevant, *see* Dkt. No. 266-1 at 13 (¶ 82);

(2) the Court erroneously told Plaintiff to "move along" when he attempted to establish the amount of property he had in his cube, *see id.* at 14 (¶ 84);

(3) the Court erroneously ruled that Plaintiff's inquiry into how long it took Defendant Daily to move his property into the storage room was irrelevant, *see id*. at 15 (¶¶ 90, 94);

(4) the Court impermissibly limited Plaintiff's examination of Defendant Daily to five additional minutes on the ground that he had already elicited the majority of the relevant testimony that he could from the witness, *see id.* at 16 (¶ 97), which resulted in his inability to impeach Defendant Daily regarding inconsistencies in his deposition testimony, *see id*. at 16-17 (¶¶ 100, 101, 201);

(5) the Court erroneously ruled that photographs of security doors were irrelevant, *see id.* at 17 (¶¶ 105-06);

(6) the Court erroneously clarified that Defendant Daily had testified that someone else had put Plaintiff's property into storage, *see id.* at 19 (¶ 112);

(7) the Court incorrectly found that Plaintiff's attempt to impeach Defendant Dann's recollection of whether it took him five or three minutes to get to the I-2 dorm was irrelevant, *see id*. at 20 (¶ 118);

(8) the Court erroneously told Plaintiff to move along when he tried to impeach Defendant Dann's recollection regarding whether he arrived with or without the roundsmen at the I-2 dorm, *see id.* at 21 (¶ 122);

(9) the Court erroneously ruled that "'[w]hat happened to the property after the search is not really an issue in this case,'" *see id.* at 23 (¶ 131).

Due to these errors, Plaintiff asserts that he was unable effectively to make his case that Defendant Daily lacked the "window of opportunity" to conduct a thorough search of Plaintiff's property and then go to the administrative office and take a photo of the weapon between 8:25 a.m. and 9:20 a.m.

As the Court has already noted, "'"[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice."'" *Tesser v. Bd. of Educ. of City Sch. Dist. of City of New York*, 370 F.3d 314, 320 (2d Cir. 2004) (quotation omitted). In that regard, when a party moves for a new trial on the ground that the court erroneously excluded evidence, such as witness testimony, "Rule 59 is read in conjunction with Rule 61." *Garnett v. Undercover Officer C0039*, No. 1:13-cv-7083, 2015 WL 1539044, *10 (S.D.N.Y. Apr. 6, 2015)). Rule 61 provides that, "'[u]nless justice requires otherwise, no error in admitting or excluding evidence -- or any other error by the court or a party -- is ground for granting a new trial. . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.'" Fed. R. Civ. P. 61. Furthermore, "[w]hether an evidentiary error implicates a substantial right depends on 'the likelihood that the error affected the outcome of the case.'" *Tesser*, 370 F.3d at 319 (quotation omitted). Although Plaintiff argues at length that the Court erred in its handling of Plaintiff's witness examination, he has not, in any way, made a sufficient showing that the result of the case was a miscarriage of justice.

Assuming that Plaintiff could establish that the timing of events on the log sheets and on the photo of the weapon were inconsistent with some of Defendants' testimony, it does not follow that Defendants planted a weapon in his cell because of his actions on the IGRC or the filing of his own grievances. Furthermore, the Court gave Plaintiff ample opportunity to make

his point regarding the discrepancy in the timing of the search. For example, in his closing, Plaintiff reiterated his claim that it was remarkable that Defendant Daily was able to search "15 draft bags in 45 minutes." *See* Dkt. No. 271-1 at 4:22. Furthermore, Plaintiff argued that Defendant Daily's testimony that it took him only one minute to get through all the security checkpoints was impossible. *See id.* at 6.

In short, the Court permitted Plaintiff to present his theory that Defendants colluded to plant the weapon in his cell by showing that the timing of the search and Defendants' recollection were internally inconsistent. The jury, however, simply rejected the inference that Plaintiff's circumstantial evidence permitted it to make.

Therefore, the Court finds that Plaintiff has failed to show that the Court's evidentiary rulings resulted in a miscarriage of justice and, accordingly, denies his motion for a new trial on this ground.

### *e. Due process claim*

Plaintiff argues that the Court erred in ruling that he had "abandoned" his due process claim against Defendant Jubert because there was no evidence to support that decision. *See* Dkt. No. 266-2.

A fair review of both of the Second Circuit's decisions reveals that Plaintiff had abandoned his due process claim. First, in *Kotler I*, the Second Circuit, in describing the applicable legal rules, only explained the standard for a First Amendment retaliation claim under Section 1983. *See Kotler v. Donelli*, 382 F. App'x 56, 57 (2d Cir. 2010) ("*Kotler I*") (summary order) (stating that, "[t]o prove a First Amendment retaliation claim under Section 1983, a plaintiff must show that the speech or conduct was protected, that there was an adverse action,

and that there was a causal connection between the protected speech and the adverse action" (citation omitted)).  Furthermore, in holding that a reasonable jury could return a verdict in Plaintiff's favor, the Second Circuit only considered his First Amendment arguments.  *See id*. at 58.  In that regard, the Second Circuit stated,

> [Plaintiff] disavows ownership of the weapon, defendants' testimony is inconsistent on how and where the prison officials found the weapon, and there is evidence that at least one defendant wished to remove [Plaintiff] from the grievance committee.  *This combined with the rest of the circumstantial evidence [Plaintiff] alleges is sufficient to raise a genuine issue of fact as to whether one or more of the defendants retaliated against [Plaintiff] for his protected activities*.

*Id.* (emphasis added).

Clearly, the Court only considered Plaintiff's First Amendment claims in this decision.

In *Kotler II*, the Second Circuit recognized its previous holding in *Kotler I* that Plaintiff had "presented evidence 'sufficient to raise a genuine issue of fact as to whether one or more of the defendants *retaliated* against [Plaintiff] for his protected activities.'"  *Kotler v. Donelli*, 528 F. App'x 10, 12 (2d Cir. 2013) ("*Kotler II*") (summary order) (emphasis added) (quoting *Kotler v. Donelli*, 382 Fed. Appx. 56, 58 (2d Cir. 2010) (summary order)).  The Second Circuit framed the issue in *Kotler II* as being "whether the disciplinary determination that the weapon belonged to [Plaintiff] collaterally estops him from proving that the prison officials actually planted that weapon."  *Id.*  The Second Circuit's reasoning relates to the inapplicability of the Article 78 hearing to the issue of whether someone planted the weapon in Plaintiff's cell.  That issue was central to Plaintiff's First Amendment claims but irrelevant to his due process claim.

Therefore, because the record clearly supports the conclusion that Plaintiff had abandoned his due process claim, the Court denies Plaintiff's motion for a new trial on this ground.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgement as a matter of law or, in the alternative, for a new trial, *see* Dkt. No. 266, is **DENIED**; and the Court further

**ORDERS** that Plaintiff's letter motion requesting that his motion for judgment as a matter of law or, in the alternative, for a new trial be referred to a magistrate judge for a report and recommendation, *see* Dkt. No. 273, is **DENIED as moot**.

**IT IS SO ORDERED.**

Dated: May 18, 2017
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge